598 A.2d 1296

Bernard DUBLIN, Jr., a Minor by His Parents and Natural Guardians Charlotte and Bernard DUBLIN, and Charlotte and Bernard Dublin, in Their Own Right, Appellees,

v.

Harold F. SHUSTER, M.D., John R. Duda, M.D., Germantown Hospital and Medical Center, Dr. A Dinubile, Jay W. Macmoran, M.D., Germantown Orthopedics Assoc. and Wister Radiology Associates, Inc. (Two Cases)

Appeal of Harold F. SHUSTER, M.D., John R. Duda, M.D. and Germantown Orthopedic Associates, Appellants.

Appeal of GERMANTOWN HOSPITAL AND MEDICAL CENTER, Appellants.

Superior Court of Pennsylvania.

Argued April 23, 1991.

Filed Sept. 30, 1991.

Reargument Denied Dec. 6, 1991.

Leslie A. Miller, Philadelphia, for Shuster, appellant (at 2976 and appellee at 2977).

Martin G. Rubenstein, Philadelphia, for appellees.

Louis Flocco, Marks, Kent & O'Neill, P.C., Philadelphia, for Germantown Hospital, appellant (at 2976 and 2977).

Before KELLY, POPOVICH and HOFFMAN, JJ.

KELLY, Judge:

In this opinion we are called upon to determine whether the trial court was correct in finding that a general release signed by Charlotte and Bernard Dublin [hereinafter "Dublins"] on behalf of themselves and their minor son, appellee, Bernard Dublin, Jr. [hereinafter "Bernard"] pursuant to a court-approved settlement did not preclude Bernard's claim against appellants, Germantown Hospital and Medical Center [hereinafter "Hospital"] and Harold Shuster, M.D. and John Duda, M.D. [hereinafter "Doctors"]. For the reasons which follow, we find the release precludes Bernard's claim, and reverse and remand for proceedings consistent with this opinion.

On August 2, 1981, an automobile struck Bernard as he rode his bike. Bernard was taken to appellant-Hospital for treatment of his injuries. Appellants–Doctors cared for Bernard during his stay at appellant-Germantown Hospital.

When he was admitted, the Doctors diagnosed Bernard with a fractured left femur and a minor neck injury. His left leg was subsequently placed in a cast. X-rays and bone scans of Bernard's neck revealed no significant abnormality although his head tilted to one side. Bernard was treated for both injuries and released from the Hospital on September 6, 1981. On October 19, 1981, the Doctors readmitted Bernard to remove his cast. He continued to complain of a stiff neck. When the Doctors noticed Bernard's neck tilted in the opposite direction from his admission on August 2, 1981, they again x-rayed and scanned Bernard's neck. Tests indicated a slight abnormality. On November 12, 1981, while manipulating Bernard's neck under anesthesia, appellant-Shuster heard and felt a "pop." [1] Tests then

---

1. Appellant–Shuster was in the process of obtaining a cineradiograph, (a videotaped x-ray in motion), to diagnose Bernard's condition.

revealed displacement of Bernard's neck at vertebrae level C1 and C2. In April of 1982, Bernard underwent a spinal fusion to correct this displacement.

In October, 1982, appellees-Bernard and Charlotte Dublin [hereinafter "Dublins"], filed suit individually and on behalf of their minor son, Bernard, against Henry Genther, the driver of the vehicle. The parties reached a court-approved settlement of $50,000, representing Mr. Genther's maximum insurance coverage. Pursuant to this settlement, the Dublins executed a "Parents Release and Indemnity Agreement" on July 21, 1983.

On October 26, 1983, the Dublins instituted a medical malpractice claim against appellant-Hospital and appellants-Doctors. The parties thereafter conducted discovery. Appellants subsequently filed motions for summary judgment asserting that the release executed by the Dublins in July of 1983 barred further claims for injuries resulting from the accident. The trial court denied appellants' motion, basing its decision on this Court's holding in *Buttermore v. Aliquippa Hosp.*, 368 Pa.Super. 49, 533 A.2d 481 (1987) [hereinafter *"Buttermore I"*].[2] In 1989, however, the Supreme Court of Pennsylvania reversed that portion of *Buttermore* I which had allowed the plaintiff-husband's claim against the defendant-hospital. *Buttermore v. Aliquippa Hosp.*, 522 Pa. 325, 561 A.2d 733 (1989) [hereinafter *"Buttermore II"*]. Appellants then filed a motion for reconsideration with the trial court based on *Buttermore* II. The trial court granted partial summary judgment against the Dublins, but denied summary judgment in favor of Bernard. The trial court found that at the time the parties received court approval of the settlement, the court believed "that

**2.** In *Buttermore*, we held entry of summary judgment for the defendant-hospital erroneous where the evidence did not support a finding that the parties—the plaintiff-husband and the defendant-hospital—executed the release with the intent to preclude suit against the medical care provider. *Buttermore v. Aliquippa Hosp.*, 368 Pa.Super. at 60, 533 A.2d at 486. This Court also upheld the plaintiff-wife's claim for loss of consortium. Because plaintiff-wife had not signed the release, we found that she could not be bound by its provisions.

recovery [by Bernard] against other tortfeasors was still possible." (Trial court opinion at 2.) This appeal was filed.[3]

██ Motion for summary judgment may be granted only if "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Pa.R.Civ.P. 1035(b). In passing on a motion for summary judgment, this Court will view the record in the light most favorable to the non-moving party. *Kerns v. Methodist Hospital*, 393 Pa.Super. 533, 536–537, 574 A.2d 1068, 1069–1070 (1990); *Salerno v. Philadelphia Newspapers*, 377 Pa.Super. 83, 88, 546 A.2d 1168, 1170 (1988). In doing so, we accept as true all well-pleaded facts in the appellants' pleadings and give appellants the benefit of all reasonable inferences drawn therefrom. *Ector v. Motorists Ins. Companies*, 391 Pa.Super. 458, 463–464, 571 A.2d 457, 460 (1990). Summary judgment is appropriate only in those cases which are free from doubt. *Id.* Based on this standard, we find the trial court erred in refusing to grant appellants' motions for summary judgment in Bernard's suit.

██ On appeal, appellants contend that the trial court erred in denying their motion for summary judgment in favor of Bernard. Appellants argue that the "Parents Release and Indemnity Agreement" equally binds all claimants. The Dublins contend, in turn, that appellants' negligent treatment of their son's injuries provided a separate and distinct cause of action not precluded by the 1983 release. Because we find that Bernard's instant action against appellants derived from the accident of August 2, 1981, we disagree. We, therefore, hold that the release executed by the Dublins on behalf of their son bars his claim as well.

3. We note that the instant appeals, which were consolidated on February 2, 1991, are properly before us pursuant to Pa.R.A.P. 1311.

Although the trial court found Bernard's neck injury resulted from the accident of August 2, 1981,[4] it did not find that the *Buttermore* II holding precluded his suit. The trial court distinguished the facts of *Buttermore* II from the instant case:

> The salient difference is that in *Buttermore*, the plaintiff was an adult whereas in the case before us the plaintiff was a minor. Settlement of a minor's action requires court approval. At the time the court approved settlement with the driver, we must assume that the judge there was aware that the earlier *Butttermore* opinion was the majority rule, and approved settlement on an assumption that recovery against other tortfeasors was still possible.

Tr.Ct.Op. at 2. The trial court found that the *Buttermore* II decision did not bar Bernard's claim by assuming that the parties obtained judicial approval of settlement based on the earlier *Buttermore* I rule. With all due respect to the learned trial court, we disagree with such a finding under both the facts of this case and the law at the time the parties executed the release. We, therefore, find that the trial court erred in refusing to grant appellants' motion for summary judgment against Bernard.

At the time of the *Buttermore* I decision, the prevailing law held that general releases like that signed by the Dublins, were binding absent a clear showing of fraud, accident or mutual mistake. *Wolbach v. Fay*, 488 Pa. 239, 242, 412 A.2d 487 (1980); *Emery v. Mackiewicz*, 429 Pa. 322, 240 A.2d 68 (1968); *Hasselrode v. Gnagey*, 404 Pa. 549, 172 A.2d 764 (1961). Furthermore, general releases were held applicable to all tortfeasors despite the fact that they were not named within the release. *Wolbach v. Fay, supra; Hasselrode v. Gnagey, supra*. The courts of Pennsylvania have traditionally determined the effect of a release

---

**4.** This finding is implicit in the trial court's decision. We note that the release bars further actions for injuries resulting directly *or* indirectly from the accident. Had the trial court found Bernard's neck injury did *not* directly or indirectly result from the accident, it would not have barred *either* claim against appellants.

using the ordinary meaning of its language and interpreted the release as covering "only such matters as can fairly be said to have been within the contemplation of the parties when the release was given." *Estate of Bodnar*, 472 Pa. 383, 386, 372 A.2d 746, 748 (1977); *Restifo v. McDonald*, 426 Pa. 5, 230 A.2d 199 (1967).

A review of the record reveals that the Dublins signed a general release in 1983. *Buttermore* I was not decided by this Court until 1987. In 1983, suit by both the Dublins and their minor son *would* have been precluded against appellants herein. *See Wolbach v. Fay, supra.* They have neither alleged nor proven fraud, accident or mistake at the time of signing. *See Wolbach v. Fay, supra; Emery v. Mackiewicz, supra.* The plain language of the release bars further claims against "any other person ... charged or chargeable" by the Dublins or Bernard. The law at that time promulgated by the Supreme Court of Pennsylvania, *see e.g. Wolbach v. Fay, supra,* would have barred the instant suit by finding that the plain language of the release precluded it. We, therefore, disagree with the trial court's assumption that court approval of the settlement was obtained under the rule established in *Buttermore* I.

■ Settlement of a minor's action requires court approval. Pa.R.Civ.P. 2039(a) provides that "[n]o action to which a minor is a party shall be compromised, settled, or discontinued except after approval by the court pursuant to a petition presented by the guardian of the minor." Settlement agreements signed by a minor's guardian become binding on the minor as soon as the court approves the negotiated settlement. *Dengler v. Crisman*, 358 Pa.Super. 158, 162, 516 A.2d 1231, 1233 (1986). Specific approval of a release in the interest of the minor is not required. *Id.*, 358 Pa.Superior Ct. at 166–167, 516 A.2d at 1235. *See also Moore v. Gates*, 398 Pa.Super. 211, 217, 580 A.2d 1138, 1141 (1990) (additional judicial approval of settlement by Orphan's Court unnecessary where trial court in which survival action is pending had given approval to settlement).

8

The Dublins submitted a petition for approval of the settlement to the trial court individually and on behalf of their minor son, Bernard. They received court approval on July 19, 1983. Once the trial court approved the settlement, it became binding on Bernard. Bernard's parents then executed the release in question *on Bernard's behalf.*

█ The release provided in pertinent part:

In consideration of the payment, to the undersigned, of the sum of $50,000 ... the undersigned parent[s] and guardian[s] of Bernard Dublin, Jr., a minor, *do forever release,* discharge and covenant hold harmless Harry E. Genther *and any other person, firm or corporation charged or chargeable* with responsibility or liability, their heirs, administrators, executors, successors and assigns, from any and all claims, demands, damages, costs expenses, loss of services, actions and causes of action ... particularly on account of all *personal injury,* disability, property damage, loss *or damages of any kind of sustained or that may hereinafter be sustained by the said minor* or by the undersigned, in consequences of an accident that occurred on or about the second day of August, 1981....

The undersigned agreed as a further consideration and inducement for this release and indemnity agreement, that it shall apply to all unknown and unanticipated *injuries and damages directly and indirectly resulting* from the said accident, as well as to those disclosed. The undersigned understand ... that said payment in compromise is made to terminate further controversy respecting all claims for damages *that said minor or the undersigned have heretofore asserted or might* personally or through personal representatives *hereafter assert* because of said accident.

Release, dated 7/19/83 (emphasis added). The release in question was executed by the parties pursuant to a judicially-approved settlement. The parties clearly contemplated that both Bernard and his parents would be bound by the instant release. The final paragraph of the release, explicit-

ly precludes further claims by Bernard. We, therefore, find that no further judicial approval was needed where the parties' executed a release on behalf of their minor son pursuant to a judicially-approved settlement.

Viewing both the record and the applicable law in the light most favorable to Bernard, as the non-moving party herein, we find that the trial court erred in refusing to grant appellants' motion for summary judgment. The July 19, 1983 release bars all further claims by the Dublins or Bernard against Henry Genther as well as "any other person, firm or corporation charged or chargeable ... [with] ... injuries and damages directly and indirectly resulting from said accident," which includes appellant-Hospital and appellants-Doctors. We, therefore, reverse and remand for proceedings consistent with this opinion.

Jurisdiction relinquished.