**Goodyear v. Pennsylvania Steel
Foundry & Machine Co.**

C.P. of Berks County, no. 97-10453.

*John W. Roland,* for plaintiff.
*John J. Speicher* and *M. Theresa Johnson,* for defendants.

STALLONE, *J.,* January 8, 1999—This action arises out of the termination of the employment of the plaintiff, Daniel M. Goodyear, with defendant Pennsylvania Steel Foundry & Machine Company.

Between 1986 and June 1995, Goodyear was the sole shareholder, president and chief executive officer of PA Steel. In June 1995, Goodyear sold his entire ownership interest in PA Steel to Citation Corporation. In connection with the sale, Goodyear entered into a written "employment and noncompetition agreement" with PA Steel on June 12, 1995, pursuant to which he would remain the president and chief executive officer of PA Steel for a period of five years from the date of the agreement. Section 2.1 of the agreement provides that, during that five-year term, Goodyear could not "compete" with Citation Corporation, in accordance with the specific terms set forth in section 2.1, regardless of whether or not he remained employed with PA Steel during the full five-

year term of the agreement. Section 2.2 of the agreement further provides that:

"Consideration For Restrictive Covenant. In the event that Goodyear's employment is terminated prior to the end of the five-year term hereof for whatsoever reason, whether by death or disability of Goodyear, or by either Goodyear or the company with or without good cause, as consideration for the restrictive covenant of Goodyear, and in consideration of Goodyear consenting to the sale of the business and entering into this agreement, the company agrees to pay to Goodyear, his assignee or his estate: (i) $8,333 per month and (ii) annual payments in an amount equal to the incentive bonus payments that he would have been entitled to receive if he had been employed for the remainder of the five-year term hereof, except that he shall receive an amount equal to 15 percent of the incentive bonus base to the extent that it exceeds $600,000 per year (with the increase from $500,000 to $600,000 being prorated for the year in which his employment is terminated)."

In 1996, following the execution of the agreement, defendant Atchison Corporation, whose president was defendant Hugh Aiken, acquired all of the stock of PA Steel from Citation Corporation.

Goodyear was subsequently terminated from his employment on October 15, 1997. He then commenced this civil action against PA Steel, Atchison and Aiken by filing a complaint in which he asserts claims for breach of contract, violation of the Pennsylvania Wage Payment and Collection Law,[1] tortious interference with contractual relations and defamation.

---

1. Title 43, 43 P.S. §260.1 et seq. (Supp. 1999).

The defendants filed an answer to Goodyear's complaint along with new matter and a counterclaim. In Count III of their counterclaim, the defendants are seeking the entry of a declaratory judgment by this court that, although they have been making the payments to Goodyear which are required by section 2.2 of the agreement, they are under no legal obligation to do so because these payments do not constitute "wages" under the Pennsylvania Wage Payment and Collection Law, which provides an employee with a statutory remedy for an employer's breach of a contractual obligation to pay wages. Their concern is that, if they continue to pay this monthly amount to Goodyear while this action is pending but ultimately prevail at trial, they will not be able to recoup these payments from Goodyear.

Following the close of the pleadings and discovery, the parties filed cross-motions for summary judgment in which they each claim that they are entitled to judgment on Count III of the defendants' counterclaim. Goodyear argues that the amounts payable to him under section 2.2 of the agreement constitute "wages" under the Pennsylvania Wage Payment and Collection Law, while the defendants contend that they are not and that they merely constitute "consideration" for Goodyear's agreement to enter into the restrictive covenant.

As a result of the recent amendments to the Pennsylvania Rules of Civil Procedure governing summary judgments, the practice and legal standard for granting them is now unclouded. After the relevant pleadings are closed, any party may move for summary judgment. Pa.R.C.P. 1035.2; see also, *Ertel v. Patriot-News Company*, 544 Pa. 93, 98, 674 A.2d 1038, 1042 (1996). A motion for summary judgment may be granted only if the plead-

ings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to a material fact and that the moving party is entitled to judgment as a matter of law. *Dublin by Dublin v. Shuster,* 410 Pa. Super. 1, 598 A.2d 1296 (1991); *Beach v. Burns International Security Services,* 406 Pa. Super. 160, 593 A.2d 1285 (1991). The parties have agreed that there are no genuine issues of material fact to be determined by a factfinder relative to Count III of the defendants' counterclaim and, therefore, that the sole issue before this court is one of law to determine whether, under Pennsylvania law, the payments in question constitute "wages" under the Pennsylvania Wage Payment and Collection Law.

In determining this issue, we look first to the following definition of the term "wages" in section 260.2(a) of the Pennsylvania Wage Payment and Collection Law: "all earnings of an employee, regardless of whether determined on time, task, piece, commission or other method of calculation. The term 'wages' also includes *fringe benefits or wage supplements*[2] whether payable by the employer from his funds or from amounts withheld from the employes' [sic] pay by the employer."

That section of the Pennsylvania Wage Payment and Collection Law further defines "fringe benefits or wage supplements" to include: "all monetary employer payments to provide benefits under any employe [sic] benefit plan, as defined in section 3(3) of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq.; as well as separation, vacation, holiday, or guar-

---

2. All italicized type appearing in this opinion is for emphasis purposes only.

anteed pay; reimbursement for expenses; union dues withheld from the employes' [sic] pay by the employer; *and any other amount to be paid pursuant to an agreement to the employe,* [sic] a third party or fund for the benefit of employes [sic]."

Our review of the case law submitted by the parties leads us to conclude that the case of *Bowers v. Neti Technologies Inc.,* 690 F. Supp. 349 (E.D. Pa. 1988) (Gawthrop, J.), is controlling. There, the plaintiffs, R. Dennis Bowers and Roger H. Folts, entered into separate written employment agreements with Phoenix Companies Inc., pursuant to which Bowers became the "chief executive officer" and Folts became the "chief operating officer" of Phoenix. Both Bowers and Folts became shareholders of Phoenix upon commencing employment with Phoenix. Their employment agreements provided, inter alia, that upon the termination of their employment with Phoenix (other than for cause or by reason of death or disability):

"Employee shall have the option, but shall not be required, to sell all or part of the stock then owned by him and the Company shall buy such stock so offered for an amount equal to its then current value."

Bowers and Folts were subsequently terminated from their employment with Phoenix. They then filed suit seeking to recover, inter alia, the "stock repurchase payments" under the Pennsylvania Wage Payment and Collection Law.[3] The defendants named in the suit filed a motion for judgment on the pleadings, arguing that these pay-

---

3. Bowers and Folts also sought to recover "severance pay" provided for in their employment agreements as "wages" under the Pennsylvania Wage Payment and Collection Law which is not an issue in the action at bar.

ments did not qualify as "wages" under the Pennsylvania Wage Payment and Collection Law. In rejecting that argument, Judge Gawthrop of the United States District Court for the Eastern District of Pennsylvania reasoned as follows at page 357 of his opinion:

"I conclude that the stock repurchase payments were offered by defendants to plaintiffs to encourage plaintiffs to join Phoenix as employees . . . *they were certainly 'wages' within the broad definition of the WPCL in that they were payments pursuant to agreement and they were offered to plaintiffs as employees, and not for some reason entirely unrelated to their employment by Phoenix.*"

In the action at bar, we find that the defendants offered these payments to Goodyear, pursuant to the agreement, in order to encourage him to work for PA Steel instead of for a competitor; they were not to be paid to him simply as consideration for his agreement to enter into a restrictive covenant. Goodyear had been the sole shareholder, president and chief executive officer of PA Steel for the prior 10-year period and his knowledge and experience would be an asset to PA Steel as it moved forward under new ownership. Therefore, we conclude that the payments required by section 2.2 of the agreement clearly fall within the definition of "wages" under the Pennsylvania Wage Payment and Collection Law.

Accordingly, we enter the following attached order.

## ORDER

And now, January 8, 1999, it is hereby ordered that:

(1) The defendants' motion for summary judgment relative to the declaratory judgment request in Count III of the defendants' counterclaim is denied; and

292

(2) The plaintiff's motion for summary judgment relative to the declaratory judgment request in Count III of the defendants' counterclaim is granted. Accordingly, judgment is hereby entered in favor of the plaintiff and against the defendants on Count III of the defendants' counterclaim.