## Miller v. Kapcala

C.P. of Monroe County, no. 3185 Civil 1998.

*James E. Crossen,* for plaintiff.
*David W. Saba,* for defendant Kapcala.
*Lori J. Cerato,* for defendant Pocono Medical Center.
*Mark H. Scoblionko,* for defendant McCrae.
*Kathleen A. Walsh,* for defendant Kluk.

WALLACH MILLER, *J.,* January 29, 1999—Glen and Ruth Miller filed medical malpractice actions against Jan Kapcala D.O., Pocono Medical Center, Charles McCrae M.D. and McCrae Medical Associates, alleging negligent medical care Mr. Miller received after sustaining injuries in an automobile accident with a car driven by additional defendant Frank M. Kluk. Defendants have filed a motion for summary judgment, arguing that a release signed by the plaintiffs with the additional defendant precludes any action against them. All agreed that summary judgment should be entered in favor of Mr. Kluk.

## BACKGROUND

Glen Miller sustained injuries to his foot in a motor vehicle accident on May 29, 1996. The driver of the other vehicle involved was additional defendant Kluk. Mr. Miller was taken to Pocono Medical Center where he was treated in the emergency room by Dr. Kapcala. Upon release from the hospital, he was advised to see a doctor in his home area of Berks County. Surgery was performed on plaintiff's right foot by Dr. McCrae and the McCrae Medical Associates.

Plaintiffs instituted a claim against Mr. Kluk. Plaintiff then settled that matter and signed a general release

on October 6, 1996. During this time, plaintiff was under the care of Dr. McCrae and McCrae Medical Associates.

Sometime in July of 1997, plaintiff sought a reevaluation of his right foot but discovered Dr. McCrae was no longer practicing medicine. Plaintiff then saw Dr. Scott Nord of Berks Orthopedic Associates for the reevaluation. After this examination, plaintiff alleges for the first time that the treatment rendered to him previously gives rise to a potential cause of action for medical malpractice. A complaint for medical malpractice was filed on May 13, 1998.

## DISCUSSION

It is well settled that an entry of summary judgment is only properly granted in those cases where the right to such judgment is clear and there are no material facts at issue. *Marks v. Tasman,* 527 Pa. 132, 589 A.2d 205 (1991); *Musser v. Vilsmeier Auction Co.,* 522 Pa. 367, 562 A.2d 279 (1989). All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. *Thompson Coal Co. v. Pike Coal Co.,* 488 Pa. 198, 412 A.2d 466 (1979).

The defendants request this court to enter summary judgment arguing that the release signed between the plaintiffs and Mr. Kluk also releases defendants from the malpractice claims made against them. The release in pertinent part reads:

"[We] release, and forever discharge Frank M. Kluk, Allstate Insurance Company and any other person, partnership, firm, or corporation . . . from any and all claims, . . . and causes of actions arising from any occurrence, up to the present time, . . . that occurred on or about May 29, 1996 . . . ."

The plaintiffs counter that argument by alleging that the malpractice claim is not barred by the release because the claim itself did not accrue until after the release was signed.

Our analysis begins with the Pennsylvania Supreme Court decision, *Buttermore v. Aliquippa Hospital,* 522 Pa. 325, 561 A.2d 733 (1989). There, plaintiff was involved in an automobile accident on December 3, 1981 and was taken to Aliquippa Hospital for treatment of his injuries. Plaintiff subsequently signed a release with the other driver on November 14, 1983, which included any future claims against "any and all other persons." *Id.* at 329, 561 A.2d at 734. Two weeks after the release was executed, plaintiff filed a malpractice claim against the hospital for negligent treatment rendered for the injuries sustained from the accident. The court relied on the ordinary meaning of the document's language and held the release discharged the claim. *Id.*

A malpractice claim was also barred by a release executed in *Dublin by Dublin v. Shuster,* 410 Pa. Super. 1, 598 A.2d 1296 (1991). There, plaintiff was involved in a car accident and was diagnosed with a fractured femur and a minor neck injury. As a result of negligent treatment by the defendants, a spinal fusion was performed. When a malpractice action was filed three months after the release was signed, plaintiff contended that the malpractice claim was a "separate and distinct cause of action" not precluded by the release. Confining the inquiry to the release language, the court rejected that argument and held that the subsequent injury to plaintiff was directly or indirectly the result of the underlying accident. *Id.*

In *Vaughn v. Didizian,* 436 Pa. Super. 436, 648 A.2d 38 (1994), our Superior Court reached a different result.

Beth Vaughn sustained injuries when she was involved in auto accident on August 12, 1983, and signed a release three months later on November 23, 1983. She then had surgery on August 1, 1984 for spinal injuries she sustained from the accident. A malpractice claim was later filed, and Dr. Didizian countered with a summary judgment motion pointing to the release.

The Superior Court relying on *Henry Shenk Co. v. Erie,* 352 Pa. 481, 43 A.2d 99 (1945), held that releases are to be strictly construed so as to not bar the enforcement of claims that have not accrued at the date of signing. *Id.* at 487, 43 A.2d at 40. Since the release was signed almost seven months before plaintiff sought treatment for her spinal injuries, the negligent treatment had not accrued at the date of the signing of the release. Therefore, the release did not bar the cause of action. *Id.*

The United States District Court case, *Youngren v. Presque Isle Orthopedic Group,* 876 F. Supp. 76 (W.D. Pa. 1995), expanded *Vaughn* by incorporating the discovery rule. Youngren sustained injuries from an auto accident on November 14, 1988 and underwent back surgery on July 17, 1989. A general release was executed over one year later on August 30, 1990 with the other driver. Youngren was involved in a second auto accident in October of 1992, and, as a result, she sought treatment for her back. Pursuant to an examination, she learned that the surgery on her back in relation to the first accident had been performed on the wrong side. Despite the release, a malpractice action was filed.

The district court denied summary judgment, reasoning that the malpractice claim was not barred by the release because that action had not accrued when the release was executed. *Id.* at 80. The court applied the "discovery rule" which says a cause of action does

not accrue until plaintiff knows or reasonably should have known that she has been injured and the injury has been caused by another party. *A. McD. v. Rosen,* 423 Pa. Super. 304, 308, 621 A.2d 128, 130 (1993). Furthermore, the discovery rule requires that plaintiff know of the injury, its cause, and the causal relationship between the injury and the conduct. *Holmes v. Lado,* 412 Pa. Super. 218, 225, 602 A.2d 1389, 1392 (1992).

Since plaintiff did not first learn about her faulty surgery until October of 1992 during an examination for an unrelated accident, her malpractice claim did not accrue until October of 1992. *Youngren, supra.* Because the release was executed well before the malpractice claim had accrued, the cause of action survived summary judgment. *Id.;* see also, *Porterfield v. Trustees of Hospital of University of Pennsylvania,* 441 Pa. Super. 529, 657 A.2d 1293 (1995) (holding for defendants by noting that malpractice claim accrued before release was executed).

We agree with the *Youngren* and *Vaughn* courts. Plaintiffs' malpractice claim in the case at bar did not accrue until after the release was executed. As in *Youngren,* we apply the discovery rule to determine when that date actually occurred. Plaintiff learned of a possible cause of action during an examination by Dr. Nord on August 19, 1997.

Plaintiff's deposition testimony supports this conclusion. At page 42 of his deposition, he testified:

"Q. What did Dr. Nord tell you after you gave him this history and supplied this information to him?

"A. He was appalled that they gave me a spinal. He said, what did they do that for? I said, to put my foot back into place from the dislocation. And he just couldn't believe that they didn't do an open reduction. I didn't know what that meant at the time." (Plaintiff's deposition p. 42, ll. 5-9.)

At page 73 of the deposition, he further testified:
"Q. Has any physician ever told you what the critical period is to get blood flow back to the bone?

"A. As I recall, Dr. Nord said that it was imperative to have it immediately with a break like that to get the blood flowing back into the bones. Meaning, as soon as I was taken to the operating room, that's when it should have been done. Right after the accident." (Plaintiff's deposition p. 73, ll. 14-21.)

We therefore find that plaintiff did not know or have reason to know of his injury until he sought treatment from Dr. Nord. See *A. McD., supra;* see *Holmes, supra.* Since plaintiffs' cause of action did not accrue until after the release was executed, which was over 10 months later, the release does not bar the malpractice claim. See *Vaughn, supra;* see also, *Youngren, supra.*

We distinguish our holding today from the holdings in *Buttermore, Dublin, Smith v. Thomas Jefferson University Hospital,* 424 Pa. Super. 41, 621 A.2d 1030 (1993) and *Holmes v. Lankenau Hospital,* 426 Pa. Super. 452, 627 A.2d 763 (1993) for the same reason Judge Johnson distinguishes them in *Vaughn.* In those decisions, the cause of action accrued before the release was executed. *Vaughn, supra* at 441, 648 A.2d at 41. That is not the instance here. The release was signed on October 6, 1996, but Mr. Miller did not learn of the alleged negligent medical care until August 19, 1997.

Defendants nevertheless contend that Mr. Miller was already undergoing medical care before the release was executed which is distinguishable from the facts in *Vaughn* because in her case, the negligent surgery did not occur until seven months after the release was executed. A similar situation was confronted in *Youngren,* and District Judge Cohill flatly rejected that argument by holding that *Vaughn* did not rest on this mere fact. *Youngren, supra* at 79. Rather, that court adopted a broader interpretation. *Id.* Since the cause of action

did not accrue until after the release was signed, the document does not bar the claim. *Id.* It so follows in plaintiffs' case.

Defendants also rely on *Buttermore* and *Dublin* because the release language in the case before us covers the fact that Mr. Miller's malpractice claim arises out of the same accident. Therefore, the release bars the claim. We disagree because *Vaughn* addressed this situation. There, the negligent medical care administered to Ms. Vaughn's back arose from an injury sustained in her auto accident, yet the court still denied summary judgment relying on the rule promulgated in *Henry Shenk.*

Similarly, defendants argue that the facts in *Youngren* are distinguishable because Youngren sustained a malpractice injury that did not arise out of the same accident. Keep in mind that the writing court denied summary judgment based upon two theories and held "either, by itself will suffice." *Id.* at 78. The second theory, "the cause of action accrued after the release was executed" is the proper theory for the facts before us and stands by itself. We read *Youngren* to mean that the plaintiff does not have to allege a separate injury as long as the cause of action accrued after the release was executed.

For the foregoing reasons, we enter the following order.

## ORDER

And now, January 29, 1999, the motion for summary judgment filed by defendants Jan S. Kapcala D.O., Pocono Medical Center, Charles McCrae M.D. and McCrae Medical Associates Inc. is denied.

Summary judgment is granted in favor of additional defendant Frank M. Kluk.