J-A16045-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| HAL S. BRODERSON, LAURA E. SANCHEZ, AS TRUSTEE OF:  TRUST F/B/O R. PRICE-SANCHEZ, TRUST F/B/O C. PRICE SANCHEZ; TRUST F/B/O S. BRODERSON, TRUST F/B/O J. BRODERSON, TRUST F/B/O TOREY BRODERSON, TRUST F/B/O TY BRODERSON, CHARLES G. HADLEY, THOMAS M. ROSSI, KATHLEEN A. ROSSI AS TRUSTEE OF JENNIFER LYNN ROSSI, GIFTING TRUST, CHRISTOPHER THOMAS ROSSI, GIFTING TRUST AND THOMAS UHLMAN | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | |
| v. | |
| GALDERMA LABORATORIES, L.P. | |
| Appellee | No. 3426 EDA 2014 |

Appeal from the Order Entered October 14, 2014
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s):  August Term, 2014 No. 140800353

BEFORE:  LAZARUS, J., OLSON, J., and PLATT, J.[*]

MEMORANDUM BY LAZARUS, J.:                    **FILED SEPTEMBER 30, 2015**

Hal S. Broderson, Laura E. Sanchez, as Trustee of: Trust f/b/o R. Price-Sanchez, Trust f/b/o C. Price Sanchez; Trust f/b/o S. Broderson, Trust f/b/o J. Broderson, Trust f/b/o Torey Broderson, Trust f/b/o Ty Broderson, Charles G. Hadley, Thomas M. Rossi, Kathleen A. Rossi as Trustee of Jennifer

_____

[*] Retired Senior Judge assigned to the Superior Court.

Lynn Rossi, Gifting Trust, Christopher Thomas Rossi, Gifting Trust and Thomas Ulhman (hereinafter "Appellants"), appeal from Judge Glazer's order of October 14, 2014, granting Galderma Laboratories' ("Galderma") motion for judgment on the pleadings. After our review, we affirm.

Appellants Broderson, Hadley, Rossi and Uhlman are former shareholders of SansRosa Pharmaceutical Development, Inc., which held the patents for the treatment of rosacea.[1] SansRosa, which was wholly owned by its shareholders, sold all its shares to CollaGenex Pharmaceuticals, Inc. ("CollaGenex") pursuant to a stock purchase agreement ("Agreement"). In consideration for the sale of the SansRosa shares, CollagGenex, ultimately succeeded by Galderma, agreed to pay the SansRosa shareholders up to $6.8 million plus periodic Earn Out payments ("Earn Outs"). The Earn Outs are the source of the controversy here.

The parties set forth the duration of the Earn Outs in the Agreement. The Agreement provides in relevant part:

> **(c) Earn Out Consideration Payments.** In consideration for the Shares delivered by the Shareholders to CollaGenex at the Last Closing, CollaGenex shall pay to the Shareholders, in addition to the payment made at the Last Closing, an earn out consideration (the "Earn Out Consideration"), based on
>
> > (i) Net Sales in the U.S. of SansRosa Patented Products, whether sold directly by CollaGenex or through a third party, as follows:
> >
> > * * *

---

[1] Rosacea is a skin condition causing redness.

(ii)    Net Sales in the U.S of SansRosa Products, whether sold directly by CollaGenex or through a third party, if during any portion of any calendar year no SansRosa Patented Products were being sold, and Net Sales of SansRosa Products in the U.S. exceeded $100 million in such calendar year, as follows:

* * *

(iii) Net Sales outside the U.S. of SansRosa Products, where such sales are made directly by CollaGenex in a jurisdiction where a patent arising out of the Patent Applications is either issued or pending as following:

* * *

(iv)    Out-License Payments received from licensees outside the U.S., as follows:

* * *

**(e) Limited Duration.  The obligation to make any payments of Earn Out Consideration shall expire on the earlier of the fifteenth anniversary of the Last Closing *or* December 31, 2022.**

Stock Purchase Agreement, 12/15/05, at 6-8 (emphasis added).

Section 1(d)(vii) of the Agreement defines "Last Closing" as NDA (New Drug Application) Approval.  The Agreement states:

(vii)   **NDA Approval.** Upon approval of the first New Drug Application by the FDA that relates to a SansRosa Product, CollaGenex shall purchase, and the Shareholders shall deliver to CollaGenex, all of the remaining Shares at a price per share that results in the aggregate consideration payable for such Shares being $1,500,000, plus the Earn Out consideration described in section 2(c).    The $1,500,000 shall be payable at such closing (**this closing is sometimes referred to in this**

> **Agreement as the "Last Closing"**) and the Earn Out Consideration shall be payable as described in section 2(c).

Stock Purchase Agreement, at 5. At the time the parties entered into the Agreement, the patents were pending, so they could not know with certainty when they would actually expire.

On August 4, 2014, Appellants filed a complaint against Galderma, seeking reformation of the Agreement. Appellants alleged mutual mistake of fact regarding the term for contractual Earn Outs owed to them. Galderma filed an Answer and New Matter and a Motion for Judgment on the Pleadings. On October 14, 2014, the trial court granted Galderma's motion for judgment on the pleadings. Appellants' motion for reconsideration was denied and this appeal followed. Appellants raise the following issues for our review:

> 1. Did the trial court err by refusing to accept as true all of Appellants' well-pleaded averments of fact - particularly, specific averments of fact that a mutual mistake was made by the parties as to the appropriate date for which contractual earn-out payments ["Earn Outs"] owed to Appellants would terminate?
>
> 2. Did the trial court err by relying on statements outside of the pleadings when it concluded that Appellants and Galderma committed no mutual mistake of existing fact as to the date on which the contractual Earn Out payments would terminate, and could have only "predicted" such date – which is a characterization found nowhere in the pleadings and directly contrary to Appellants' position?
>
> 3. Did the trial court err by entering judgment on the pleadings despite the parties' disputes of fact regarding whether a mutual mistake was made?

4. Did the trial court err in entering judgment on the pleadings despite the fact that Galderma prematurely filed its Motion for Judgment on the Pleadings before the close of pleadings?

5. Did the trial court err by entering a judgment on the pleadings without affording Appellants the opportunity to amend their Complaint to correct any alleged defects?

We address the first three claims together. Initially, we note that judgment on the pleadings is inappropriate if there are unknown or disputed issues of fact. Pa.R.C.P. 1034.[2] Judgment on the pleadings will be granted only where, on the facts averred, the law says with certainty no recovery is possible. *Smith v. Thomas Jefferson Univ. Hosp*., 621 A.2d 1030, 1031 (Pa. Super. 1993). "It is fundamental that a judgment on the pleadings should not be entered where there are unknown or disputed issues of fact. The court must treat the motion as if it were a preliminary objection in the nature of a demurrer. In conducting this inquiry, the court should confine its consideration to the pleadings and relevant documents." *Piehl v. City of Philadelphia*, 987 A.2d 146, 154 (Pa. 2009) (citations omitted).

When reviewing the grant of a motion for judgment on the pleadings, all well-pleaded statements of fact, admissions, and any documents properly attached to the pleadings presented by the party against whom the motion is filed, are considered as true. *Citicorp North America, Inc. v.*

_____

[2] Rule 1034 states: "After the relevant pleadings are closed, but within such time as not to unreasonably delay the trial, any party may move for judgment on the pleadings." Pa.R.C.P. 1034(a).

***Thornton***, 707 A.2d 536, 538 (Pa. Super. 1998). The facts, then, are gleaned from Appellants' complaint and, to a limited extent, its response to allegations raised in Galderma's new matter. ***See Altoona Regional Health System v. Schutt***, 100 A.3d 260, 265 (Pa. Super. 2014); ***Swift v. Milner***, 371 Pa. Super. 302, 538 A.2d 28, 31 (Pa. Super. 1988) (in determining propriety of trial court's award of judgment on the pleadings, we accept as true all well-pleaded statements of fact of non-moving party and "against that party only those facts specifically admitted.").[3]

Appellants aver in their complaint that, "Although the Agreement provides that Earn Outs shall expire on the earlier of the fifteenth anniversary of the Last Closing [which would be in the year 2028,] or December 31, 2022, the parties had always intended for the Earn Outs to be paid through the last full year prior to the expiration of the final issued SansRosa patent." Complaint, 8/1/14, at ¶ 24. Galderma, in its Answer, denied this allegation. Answer, 9/8/14, at ¶24. Galderma avers, to the contrary, that "the Agreement is clear that "[t]he obligation to make any payments of Earn Out consideration shall expire on the earlier of the

_____

[3] Appellants claim, in issue four, that the trial court erred in granting Galderma's motion for judgment on the pleadings prior to Appellants' Reply to New Matter. We find no error. For the purposes of the disposition of the motion, all of the averments in the defendant's answer are taken as true. In ruling on a motion for judgment on the pleadings, the trial court is limited to considering plaintiff's complaint and defendants' answer. ***See U.S. Steel & Carnegie Pension Fund v. Decatur***, 528 A.2d 165, 167 (Pa. Super. 1987), *citing* ***Luria Steel & Trading Corp. v. Dittig***, 199 A.2d 465 (Pa. 1964).

fifteenth anniversary of the Last Closing or December 31, 2022." *Id*., citing Agreement, at 2(e).

Appellants allege that the parties "mistakenly" chose *December 31, 2022* as the final date based on a *prediction* of when the patents would expire, *instead of December 31, 2023,* the end of the full year prior to the year of expiration. Appellants claim, therefore, that the mistake deprived Appellants of one year of Earn Outs. In its Answer, Galderma denies a mistake was made in the drafting of the Agreement, and states that the Agreement represents the "final and complete expression of the parties' agreement." Answer, *supra* at ¶¶ 24, 30, 34-36, 38, 43.

A patent expires 20 years after filing of the patent application,[4] and, apparently, as a result of filing delays, the parties' assumption was incorrect; *the actual date of expiration of the patents is 2025*, not 2023 (and therefore the last full year prior to expiration is 2024, not 2022). Appellants seek reformation of the contract, based on mutual mistake, to reflect that fact.

_____

[4] 35 U.S.C. § (a)(2) provides, in relevant part:

> "Subject to the payment of fees under this title, such grant shall be for a term beginning on the date on which the patent issues and ending 20 years from the date on which the application for the patent was filed in the United States or, if the application contains a specific reference to an earlier filed application or applications under section 120, 121, 365(c), or 386(c) from the date on which the earliest such application was filed.

"It has long been the law that courts of equity have the power to reform a written instrument where there has been a showing of fraud, accident or mistake." ***Giant Food Stores, LLC v. The Silver Spring Development, L.P.***, 959 A.2d 438, 449 (Pa. Super. 2008). "Mutual mistake will afford a basis for reforming a contract. Mutual mistake exists, however, only where both parties to a contract [are] mistaken as to existing facts at the time of execution. Moreover, to obtain reformation of a contract because of mutual mistake, the moving party is required to show the existence of the mutual mistake by evidence that is clear, precise and convincing." ***Holmes v. Lankenau Hosp.***, 627 A.2d 763, 767–68 (Pa. Super. 1993) (emphasis added) (citations and quotation marks omitted); ***see also Zurich Am. Ins. Co. v. O'Hanlon***, 968 A.2d 765, 770 (Pa. Super. 2009). At this stage, however, Appellants are required to only to set forth the material facts on which the claim of mutual mistake is based. Pa.R.C.P. 1019(a).

Here, the trial court found Appellants failed to demonstrate a mistake of fact, as the allegedly mistaken "fact" was a future date that did not exist at the time the parties executed the agreement. The parties both acknowledge that the December 31, 2022 date was an assumption or prediction, based on when the patent application was filed, and not a fact for which there could be a mistake about at that time. As Judge Glazer states in the explanatory footnote of his Order, the parties could have tied the Earn Out period to the life of the patent, but instead chose a specific date. The

parties could have included language that Appellants would receive Earn Outs through the last full year prior to expiration of the patents. They did not.

In support of their argument, Appellants refer to an email between counsel, which states:

> On the issue of sunset of earn out, I went with your last closing rather than first closing end point, and rather than limiting this by using the words life of the patent, slipped in the same concept by taking a 12/31/22 drop dead date (which would be the end of the last full year of the anticipated life of the patents).

***See*** Complaint, 8/1/14, Exhibit C. Notably, even in that email, the language is indefinite; it refers to the "anticipated" life of the patents.

Essentially, Appellants' argument is grounded on their claim that the trial court has mischaracterized the parties' mutual mistake as "nothing more than a future prediction—a position found nowhere in the pleadings and directly contradicted by Appellants' allegations in their complaint and exhibits attached thereto." Appellants' Brief, at 16-17. However, as Galderma points out, the December 31, 2024 earn out expiration date that Appellants suggest be substituted for the December 31, 2022 date, could not have been calculated at the time the agreement was executed. In their Complaint, Appellants aver that

> the normal expiration dates on all five patents have been affected, in varying ways, by patent term adjustments or delays caused the U.S. Patent and Trademark Office and by terminal disclaimers filed to avoid or overcome a rejection based on double patenting. The actual expiration dates for the patents

are as follows: US 8,231,885 - May 24, 2025; US 8,426,410 - September 10, 2024; US 8,410,102 - October 23, 2024; and US 7,439,241 Patent and US 7,838,563 Patent - **August 25, 2025**.

Complaint, ***supra***, at ¶ 20 (emphasis in original).

In its Answer, Galderma admitted that the normal expiration dates on the five patents "have been affected by patent term adjustments for delays caused by the U.S. Patent and Trademark Office after the Agreement was executed and by terminal disclaimers filed after the Agreement was executed." Answer, ***supra***, at ¶ 20. Galderma, therefore, cannot dispute that at the time the parties executed the Agreement, an actual expiration date could not be determined.

In New Matter, Galderma asserts that there was no mutual mistake because it would have been impossible for the parties to have made the mistake alleged in the Complaint at the time that the Agreement was executed. The parties agreed to a date certain, Galderma admitted that normal expiration dates were affected by delays and other term adjustments. Therefore, at the time that the parties executed the Agreement they did not and could not have known the actual expiration dates of the patents. The parties could, however, set a date certain based on normal patent term duration, which they did. The fact that delays extended the duration of the patents and, thus, the expiration dates of those patents does not equate to a mutual mistake made based on then-existing facts. ***Holmes***, ***supra***. We conclude, therefore, that the trial court did not err in granting Galderma's Motion for Judgment on the Pleadings.

- 10 -

In their final claim, Appellants argue that the court erred by entering judgment on the pleadings without allowing Appellants the opportunity to amend their complaint. This claim is waived. Appellants did not seek leave to amend in the trial court and raise this for the first time on appeal. **See** Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."). **See also Coyne v. Porter-Hayden Co**., 428 A.2d 208, 211 n.4 (Pa. Super. 1981) ("[P]laintiff herein did not request the lower court to grant leave to amend her pleadings. Because plaintiff did not seek relief in the lower court, we cannot now consider whether leave to amend should have been granted.").

Order affirmed.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/30/2015