**Daniel M. FORTNEY, Appellant,**

v.

**Ronald W. CALLENBERGER, M.D., Appellee.**

Superior Court of Pennsylvania.

Argued April 17, 2002.

Filed June 12, 2002.

---

Charles P. Hehmeyer, Philadelphia, for appellant.

C. Edward S. Mitchell, Williamsport, for appellee.

Before: JOYCE, BECK and POPOVICH, JJ.

POPOVICH, J.

¶1 Daniel M. Fortney appeals from the entry of summary judgment in favor of Ronald W. Callenberger, M.D., entered on June 6, 2001, in the Court of Common Pleas, Tioga County. On appeal, Fortney challenges the trial court's finding that the release signed by Fortney discharged claims against Callenberger and that Callenberger had standing to assert the release as a defense against Fortney's claims. Upon review, we affirm.

¶2 On January 3, 1996, Fortney was involved in a motor vehicle accident that resulted in serious injury to his ankle. The injury occurred when Fortney was standing behind a vehicle stuck in the snow, and the chain being used to tow the vehicle out of the snow struck him in the ankle, breaking it. He was taken to the emergency room at Soldiers and Sailors Memorial Hospital where Callenberger performed surgery on Fortney's ankle. At an office visit on April 25, 1996, with Callenberger, Fortney indicated that he had pain, lack of mobility, inability to walk, a "clicking" sound, and felt that something was wrong with his leg. By the end of April, Fortney thought there might be a problem with the care he was receiving

from Callenberger. Fortney missed the next several appointments with Callenberger. He saw Callenberger a final time on November 4, 1996. The last visit consisted of Callenberger examining him and taking an x-ray but no further treatment.

¶ 3 On May 17, 1996, Fortney signed a release issued by State Farm Insurance, the company that insured the motor vehicles involved in the incident in which the injury occurred. In exchange for the release, Fortney was paid the sum of $76,596.60. The release stated the following:

[Fortney] hereby releases and forever discharges Hattie Sweeney, Robert Sweeney, Brandon Moyer, their heirs, executors, administrators, agents and assigns and all other persons, firms or corporations liable or, who might be claimed liable, none of whom admit liability to the undersigned but all expressly deny any liability, from any and all claims, demands, damages, actions, causes of action or suits of any kind or nature whatsoever, and particularly on account of all injuries, known and unknown, both to person and property, which have resulted or may in the future develop from an accident which occurred on or about the 3 day of January, 1996, at or near Ayersville, PA.

¶ 4 Further, the release states:

[Fortney] hereby declares that the terms of this settlement have been completely read and are fully understood and voluntarily accepted for the purpose of making a full and final compromise adjustment and settlement of any and all claims, disputed or otherwise, on account of the injuries and damages above mentioned, and for the express purpose of precluding forever any further or additional claims arising out of the aforesaid accident.

¶ 5 Before signing the release, Fortney was interviewed by Steve Horning, a State Farm Insurance representative regarding his injuries. Fortney stated to Horning that he was experiencing a great deal of pain and had problems walking. He also stated that a bone fusion may be necessary if problems occurred with the ankle.

¶ 6 On September 26, 1997, Fortney initiated this medical malpractice action against Callenberger in the Court of Common Pleas, Tioga County. By leave of court, Fortney filed an amended complaint on February 19, 1999. He alleged medical negligence against Callenberger for injury stemming from the surgery on January 3, 1996, and the subsequent treatment. Fortney alleged that Callenberger's failure to use external fixation greatly reduced his chances of recovery. Because of Callenberger's negligence, Fortney had to undergo an ankle fusion that left him totally disabled.

¶ 7 In his answer, Callenberger disputed that the use of internal fixation was improper and that his care was negligent. Additionally, he pleaded the defense of release as new matter.

¶ 8 On May 8, 2001, Callenberger filed a motion for summary judgment, asserting that Fortney's claims were barred by the May 17, 1996 release. On June 6, 2001, the trial court granted the motion for summary judgment in favor of Callenberger and against Fortney, thereby dismissing the complaint. This timely appeal followed. The trial court issued an opinion in support of its judgment.

¶ 9 On appeal, Fortney presents the following questions for our review:

1. A. Is a boilerplate release discharging "all other persons ... who might be claimed to be liable ... from any and all claims" a defense to a suit against a third party, unnamed in the release, if the action against that

third party had not accrued under the discovery rule until after the date of the release?

B. Assuming the Court answers the foregoing question in the negative, does the record in this case present a material issue of fact whether Dan Fortney's claims against Dr. Callenberger had accrued by the date of the release at issue in this case?

2. Does a third-party, unnamed in a boilerplate release, who paid no consideration and whose negligence occurred at a different time and place than the act which is the subject of the release, have standing to assert as a defense the "all other persons ... who might be claimed to be liable" language of the release when recognition of the third party's standing is not necessary to effect the intention of the parties to the release and circumstances do not indicate that the parties to the release intended to give the third party standing?

Appellant's brief at 4.

¶ 10 Summary judgment is proper when the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See* Pa.R.Civ.P. 1035.2. A material fact is one that directly affects the outcome of the case. *See Beach v. Burns Intern. Sec. Services,* 406 Pa.Super. 160, 593 A.2d 1285, 1286 (1991).

¶ 11 Our scope of review of a trial court order granting summary judgment is plenary. *See Weishorn v. Miles–Cutter,* 721 A.2d 811, 813 (Pa.Super.1998), *affirmed,* 560 Pa. 557, 746 A.2d 1117 (2000). We stated:

In reviewing the order, we must examine the record in the light most favorable to the adverse party and determine whether the moving party has established that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law.

*Id.* at 813 (citations omitted). We will overturn a trial court's entry of summary judgment "only if there has been an error of law or a clear abuse of discretion." *Hoffman v. Brandywine Hospital,* 443 Pa.Super. 245, 661 A.2d 397, 399 (1995).

¶ 12 We will examine Fortney's two contentions simultaneously. He contends that the trial court erred when it granted summary judgment in Callenberger's favor because the general release executed by Fortney barred any claims against Callenberger and when it found that Callenberger had standing to assert the release as a defense to Fortney's cause of action. We recognize that Fortney does not allege that the release was procured by fraud or deceit or that he failed to read or understand the nature of its contents. Rather, he argues that the parties to the release never contemplated barring the present claim against Callenberger because that claim had not accrued as of the release date.

¶ 13 "The courts of Pennsylvania have traditionally determined the effect of a release using the ordinary meaning of its language *and* interpreted the release as covering 'only such matters as can fairly be said to have been within the contemplation of the parties when the release was given.'" *Vaughn v. Didizian,* 436 Pa.Super. 436, 648 A.2d 38, 40 (1994) (citations omitted). Moreover, releases are strictly construed so as not to bar the enforcement of a claim that had not accrued at the date of the execution of the release. *See id.,* 648 A.2d at 40 (citations omitted).

¶ 14 In this case, the trial court utilized the first component of construing the effect of the release, *i.e.*, examining the ordinary meaning of its language and concluded that Callenberger was covered by the lease. The release stated that Fortney releases and forever discharges "all other persons, firms or corporations liable or, who might be claimed to be liable ... from any and all claims, demands, damages, actions, causes of action or suits of any kind or nature whatsoever, and particularly on account of all injuries, known or unknown ... which have resulted or may in the future develop from" the accident in question.

¶ 15 In *Buttermore v. Aliquippa Hospital*, 522 Pa. 325, 561 A.2d 733 (1989), our Supreme Court held that a release given to a particular individual and "any and all other persons ... whether herein named or not" was applicable to all tort-feasors despite the fact that they were not specifically identified in the release. *See id.* at 329, 561 A.2d at 735. The Court reasoned:

> If such a release can be nullified or circumvented, then every written release and every written contract or agreement of any kind no matter how clear and pertinent and all-inclusive, can be set aside whenever one of the parties has a change of mind or whenever there subsequently occurs a change of circumstances which were unforeseen, or there were after-discovered injuries, or the magnitude of a releasor's injuries was unexpectedly increased, or plaintiff made an inadequate settlement. It would make a mockery of the English language and of the law to permit this release to be circumvented or held to be nugatory.

*Id.* at 329, 561 A.2d at 735 (quoting *Emery v. Mackiewicz*, 429 Pa. 322, 326, 240 A.2d 68, 70 (1968)).

¶ 16 Through the plain meaning of the language in the release, Callenberger, while not a named person in the release, was covered by the release. Accordingly, Callenberger had standing to assert the release as a defense to Fortney's claim.

¶ 17 The trial court then examined the second component of construing the effect of the release, *i.e.*, examining whether the claim against Callenberger accrued prior to the execution of the release.

¶ 18 Fortney alleges that his claim accrued after the release was signed because neither he nor State Farm as parties to the release had knowledge of a claim against Callenberger until after the release was signed. Fortney claims that he was unaware of Callenberger's "mistreatment" in 1996 until he had obtained a second opinion from Dr. Witkin in 1997. He argues that his case is analogous to *Vaughn, supra.*

¶ 19 In *Vaughn*, we held that a general release that discharged all known and unknown claims arising from an automobile accident did not bar a medical malpractice action for negligent treatment of injuries sustained in an accident where the parties could not have contemplated future negligent treatment when the release was executed and the claim had not accrued at the time the release was executed. In *Vaughn*, the release was executed on November 22, 1983. The release discharged all known and unknown claims against all known and unknown parties arising from injuries sustained in the automobile accident. The plaintiff underwent surgery on August 1, 1984, some eight months after the signing of the release. It was from this surgery that the plaintiff's claim for negligent medical malpractice arose. We found that the release did not contemplate the future negligent surgery and that the claim accrued some eight months after the release was executed. For these reasons,

we found that the release could not be construed to bar the enforcement of the plaintiff's medical malpractice claim.

¶ 20 However, unlike *Vaughn,* we find that the cause of action accrued prior to the signing of the release. Thus, Fortney's reliance on *Vaughn* is misplaced.

¶ 21 In the present case, Fortney sustained injuries from a January 3, 1996 accident. Callenberger performed surgery on that date. Fortney had physical therapy from March 27, 1996 until April 23, 1996. He visited Callenberger on April 25, 1996, and indicated that he had pain, lack of mobility, inability to walk, clicking and felt that something was wrong with his leg. By the end of April, 1996, Fortney thought that there was a possible problem with Callenberger's care. He last visited Callenberger on November 4, 1996, and no treatment was rendered at that final visit.

¶ 22 Fortney also was interviewed by State Farm in April, 1996, regarding the nature and extent of his injuries. Fortney stated that he was experiencing pain and problems walking. Then on May 17, 1996, Fortney executed the release. Therefore, any action against Callenberger for medical malpractice accrued between January 3, 1996, and the end of April, 1996. By signing the release on May 17, 1996, Fortney discharged Callenberger of any possible liability. *See Buttermore, supra* (cause of action accrued prior to the execution of the release); *Dublin by Dublin v. Shuster,* 410 Pa.Super. 1, 598 A.2d 1296 (1991), *appeal denied,* 533 Pa. 600, 617 A.2d 1274 (1992) (same); *Smith v. Thomas Jefferson University Hospital,* 424 Pa.Super. 41, 621 A.2d 1030 (1993), *appeal denied,* 535 Pa. 638, 631 A.2d 1009 (1993) (same); *Holmes v. Lankenau Hospital,* 426 Pa.Super. 452, 627 A.2d 763 (1993), *appeal denied,* 538 Pa. 671, 649 A.2d 673 (1994) (same); *Flatley by Flatley v. Penman,* 429 Pa.Super. 517, 632 A.2d 1342 (.1993), *appeal denied,* 537

Pa. 620, 641 A.2d 586 (1994) (same); and *Brown v. Herman,* 445 Pa.Super. 305, 665 A.2d 504 (1995), *affirmed,* 547 Pa. 352, 690 A.2d 232 (1997) (same).

¶ 23 Accordingly, we find that the trial court did not abuse its discretion in entering summary judgment in favor of Callenberger.

¶ 24 Affirmed.