J-S29016-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| PHILIP J. BERG | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| EDWIN R. RUBIN | : | No. 1456 EDA 2017 |
| v. | : | |
| | : | |
| | : | |
| AND BONNIE OSTROFSKY | : | |

Appeal from the Order March 24, 2017
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  November Term, 2015

BEFORE:   PANELLA, J., MURRAY, J., and STEVENS*, P.J.E.

MEMORANDUM BY MURRAY, J.:                    **FILED JUNE 18, 2018**

Philip J. Berg (Appellant) appeals from the trial court's orders granting judgment on the pleadings in favor of Appellees, Edwin R. Rubin (Rubin) and Bonnie Ostrofsky (Ostrofsky).  We affirm.

Appellant and his two siblings, Judith Morris (Judith) and Joan Rubin (Joan), were the beneficiaries under the will of their mother, Rebecca Nissenbaum (Decedent).  The will named Appellant and Judith as co-executors of the estate (Estate), and was admitted to probate on August 29, 2013.  The same day, however, the three siblings executed an agreement (2013

_____

* Former Justice specially assigned to the Superior Court.

Agreement), under which Judith became the sole executrix and Appellant relinquished his role as co-executor in exchange for the Estate forgiving Appellant's debt to Decedent of more than $350,000. The 2013 Agreement also set forth procedures for the administration of the Estate and distribution of Decedent's personal property, and stated that the parties would not take any legal action against Judith as executrix or against Joan as bookkeeper for the Estate, so long as Judith and Joan exercised their fiduciary duties to the best of their ability. At this juncture, we note that Joan is married to Rubin, an attorney whose license was suspended by the Pennsylvania Supreme Court,[1] and Ostrofsky is an attorney who provided legal services to the Estate from November 2013 to May 2014.

On December 4, 2013, Appellant filed a *lis pendens* and a creditor's claim of $7,050 against the Estate. On April 4, 2014, Appellant also objected to the accounting, filed an $87,500 beneficiary's claim, and requested that the trial court charge attorney's fees, costs, and statutory sanctions against the executrix, Judith, for her alleged breach of the 2013 Agreement. On April 25, 2014, Appellant filed a bankruptcy petition in federal court. Upon application by the Estate, the bankruptcy court partially lifted the automatic stay so that the Estate litigation could resume. The Estate litigation spanned two years.

---

[1] The record indicates that Appellant was also suspended from the practice of law. Email from Rubin to Appellant, 8/22/13, Exhibit 9 to Appellant's Amended Complaint, 3/8/16.

On November 5, 2015, Appellant, Judith, and Joan executed a settlement agreement (2015 Agreement). The 2015 Agreement stated that the parties' intent was "to fully resolve all issues and disputes arising . . . from the Estate's administration . . . and to forego continued litigation of the same." Family Settlement Agreement, 11/5/15, at 2. The 2015 Agreement also included the following release clause:

> The Parties, for themselves and for their heirs, issue, spouses, executors, administrators, successors, and assigns, hereby mutually and irrevocably remise, release and forever discharge each other, individually and in any fiduciary capacity whatsoever (including, but not limited to, Judith in her capacity as Executrix of the Estate), their heirs, issue, executors, administrators, **attorneys**, successors and assigns of and from any and all damages, actions, suits, demands, costs, expenses, judgments, claims, causes of action, liabilities and indebtedness of any kind or nature whatsoever, whether at law or in equity, individual or derivative, known or unknown, asserted or unasserted, liquidated or unliquidated, foreseeable or unforeseeable, matured or unmatured, that each Party or person or entity claiming by, through or under these Parties ever had, now have or in the future may have or claim to have against each other or the Estate by reason of, or arising out of any cause, matter, thing or event from the beginning of the world to the end of time related to the Estate's administration, including without limitation all matters or claims which have been raised or could have been raised by the Parties, individually or collectively, or any third party, whether an individual or any kind or nature of an entity, during the Estate administration or arising out of any act or omission of the Executrix in her administration of the Estate, whether due to negligence or otherwise, or in connection with the 2013 Agreement, the Property, [Appellant's] Creditor's, Beneficiary's and Surcharge Claims in the Orphans' Court, and disputes arising in [Appellant's] Bankruptcy, including the Estate's [proof of claim] and [Appellant's] Sanctions Motion.

*Id.* at 4-5 (emphasis added). Pertinently, the 2015 Agreement did not define the term "attorney," and although the agreement referred to the executrix's

"[prior] lawyer [sic]," the only attorneys identified by name were the Estate's attorney, "Ryan D. Harmon, Esquire, then of the law firm Zarwin, Baum, DeVito, Kaplan, Schaer & Toddy, P.C." and Appellant's counsel, James F. Casquale, Esquire. *Id.* at 1-3.

Less than one month later, on December 3, 2015, Appellant commenced the instant action against Rubin and Ostrofsky, averring that they "misinterpreted the [2015 Agreement] to advise the Executrix in a course of action to exhaust the Estate's assets such that [Appellant] . . . received none of his intended benefits." Appellant's Amended Complaint, 3/8/16, at 1. Specifically, Appellant presented a third-party beneficiary claim for breach of contract against Rubin and Ostrofsky, averring that they failed to counsel Judith, as the executrix, "against adopting positions contrary to the" 2013 Agreement, and thus deprived Appellant of his beneficiary and creditor's interests in the Estate. Appellant's Amended Complaint at 8.

Rubin and Ostrofsky each filed preliminary objections, which were overruled by the trial court. They then each filed an answer and new matter, raising, *inter alia*, the defense of release; Rubin also denied that he ever acted as attorney to the Estate, the executrix, or any beneficiary. Subsequently, Rubin and Ostrofsky each filed a motion for judgment on the pleadings, reiterating that Appellant's claims were barred by the release clause in the 2015 Agreement. Appellant filed a response, arguing that the release clause only discharged from liability the named signatories — himself, Judith, and

Joan — and any individuals specifically identified in the 2015 Agreement. Thus, according to Appellant, the only "released" attorneys were those named in the agreement.

The trial court agreed with Rubin and Ostrofsky that the release clause barred Appellant's claims, and on March 24, 2017, granted their motions for judgment on the pleadings, and dismissed Appellant's complaint with prejudice. Appellant filed a motion for reconsideration, which the court denied. Appellant took this timely appeal.[2]

Appellant presents the following issues for our review:

1. Did the trial court err when granting judgment on the pleadings by not considering [Appellant's] allegation concerning the meaning of the undefined term 'attorneys' in a release clause contrary to the . . . Supreme Court's instruction in ***Insurance Adjustment Bur., Inc. v. Allstate Ins. Co.***, [905 A.2d 462 (Pa. 2006)] (Complaint's allegation as to agreement's meaning is an averment of fact to be accepted as true)?

2. Did the trial court re-write a release cause by relying upon selective language and without considering either the entirety of the clause or the Agreement as a whole document and contrary to the established law governing interpretation of releases?

3. Did the trial court err by determining the undefined term 'prior lawyer' — stated in the singular — extends to both Ostrofsky and Rubin and thereby resolving a disputed factual issue raised in the pleadings?

4. Did the trial court err by accepting procedurally improper Motions for Judgment on the Pleadings which do not accept as true all factual averments of the Amended Complaint or which proceed from Rubin's lately-raised factual claim to be the Executrix' 'prior attorney' in contradiction of his pleadings where he repeatedly

_____

[2] The trial court did not order Appellant's compliance with Pa.R.A.P. 1925(b).

denied ever being attorney to the Executrix and the Estate?

Appellant's Brief at 5.

We address Appellant's interrelated issues together. The essence of Appellant's claims is that the trial court erred in granting judgment on the pleadings because the parties' competing pleadings presented a question of fact: the meaning of the term "attorneys" in the release clause of the 2015 Agreement. Appellant maintains that ¶50 of his amended complaint averred that the term meant the "then current attorneys specifically named earlier in the [2015 Agreement] and not any lawyer unidentified and unnamed anywhere in the [2015 Agreement]." *Id.* at 13-14. According to Appellant, the trial court disregarded this factual averment and improperly accepted the argument of Rubin and Ostrofsky that the term "attorney" included all attorneys, including prior attorneys, Rubin and Ostrofsky. Furthermore, Appellant asserts that the trial court's determination that the release clause was a "broad release," cannot be reconciled with the paragraphs of the 2015 Agreement that specifically identified attorneys by name.

We first note the relevant standard of review:

> A trial court may grant a motion for Judgment on the Pleadings only in those cases which are so free from doubt that a trial would be a fruitless waste of resources. This may often be the case when the dispute will turn on the construction of a written agreement. Upon review, the appellate court must affirm only in those cases which are clear and free from doubt. We must reverse if the action was based on a clear error of law or if there were facts disclosed by the pleadings which should be resolved by the jury.

*Flatley by Flatley v. Penman*, 632 A.2d 1342, 1343 (Pa. Super. 1993)

(citations omitted).

> With respect to release agreements, this Court has stated:
>
> "The courts of Pennsylvania have traditionally determined the effect of a release using the ordinary meaning of its language and interpreted the release as covering 'only such matters as can fairly be said to have been within the contemplation of the parties when the release was given.'"
>
> \* \* \*
>
> [O]ur Supreme Court held that a release given to a particular individual and "any and all other persons . . . whether herein named or not" was applicable to all tort-feasors despite the fact that they were not specifically identified in the release. The Court reasoned:
>
>> If such a release can be nullified or circumvented, then every written release and every written contract or agreement of any kind no matter how clear and pertinent and all-inclusive, can be set aside whenever one of the parties has a change of mind or whenever there subsequently occurs a change of circumstances which were unforeseen, or there were after-discovered injuries, or the magnitude of a releasor's injuries was unexpectedly increased, or plaintiff made an inadequate settlement. It would make a mockery of the English language and of the law to permit this release to be circumvented or held to be nugatory.

***Fortney v. Callenberger***, 801 A.2d 594, 598 (Pa. Super. 2002) (citations omitted). "There is no requirement that a release specifically name all of the parties to be released if the terms of the release clearly extend to them." ***In re Estate of Bodnar***, 372 A.2d 746, 748 (Pa. 1977) (mortgagee bank's release — which precluded it from pursuing any claim against "any and all other person . . . which might be claimed as liable to [Reicher] on account of any and all knowns claims . . . arising out of payments to Reicher" — precluded

bank from asserting claim, which was related to Reicher, against person not named in release). With respect to contract interpretation generally, we have stated:

> When construing agreements involving clear and unambiguous terms, this Court need only examine the writing itself to give effect to the parties understanding. The court must construe the contract only as written and may not modify the plain meaning of the words under the guise of interpretation. When the terms of a written contract are clear, this Court will not re-write it or give it a construction in conflict with the accepted and plain meaning of the language used.

***Habjan v. Habjan***, 73 A.3d 630, 640 (Pa. Super. 2013) (citations omitted).

Upon review, it was proper for the trial court to resolve the parties' dispute in this case as to "the construction of a written agreement." ***See Flatley***, 632 A.2d at 1343, 1344 ("This case does not involve a dispute over the law of this state regarding the effect of releases or the general rules of contract construction. Instead, the parties disagree as to how . . . clauses in the document . . . should be read in light of the generally accepted rules of contract interpretation.").

Here, the trial court examined the release clause and concluded:

> The ordinary meaning of the language of this broad release clearly bars [Appellant's] instant action and, as such, there are no disputed issues of fact and [Rubin and Ostrofsky] are entitled to judgment as a matter of law.

Trial Court Opinion, 10/31/17, at 5. We agree.

While we have quoted the release clause in full above, the pertinent language is:

> The Parties . . . hereby mutually and irrevocably remise, release and forever discharge each other [and] their . . . **attorneys** . . . of and from any and all damages, actions, suits, demands, costs, expenses, judgments, claims, causes of action, liabilities and indebtedness of any kind or nature whatsoever . . . arising out of any cause, matter, thing or event from the beginning of the world to the end of time related to the Estate's administration, including without limitation all matters or claims which . . . could have been raised by the Parties . . . during the Estate administration . . . .

Family Settlement Agreement at 4-5 (emphasis added). The plain language of the clause is clear: Appellant unequivocally agreed to release Judith, Joan, and their attorneys (as well as heirs, issue, executors, administrators, successors and assigns) from any claim related to the administration of the estate. Appellant's argument, that the term "attorneys" meant only the attorneys who were specifically named in the 2015 Agreement, is not supported by the plain language of the contract, which imposed no such definition or restriction on the term "attorneys." *See Habjan*, 73 A.3d at 640. Accordingly, the trial court did not err in holding that Appellant's claims against Rubin and Ostrofsky were barred by the 2015 Agreement. We thus affirm the orders granting their motions for judgment on the pleadings and dismissing Appellant's complaint with prejudice.

Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 6/18/18