J-S29031-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| MICHAEL GALLAGHER AND SHARON GALLAGHER H/W | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| CARIN A. O'DONNELL, ESQUIRE AND STARK & STARK, P.C. | : | No. 557 EDA 2017 |
| | : | |
| APPEAL OF: MICHAEL GALLAGHER | : | |

Appeal from the Judgment Entered January 4, 2017
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  April Term, 2014 No. 02810

BEFORE:   PANELLA, J., MURRAY, J., and STEVENS*, P.J.E.

MEMORANDUM BY STEVENS, P.J.E.:                  **FILED JULY 16, 2018**

Appellants/Plaintiffs Sharon and Michael Gallagher appeal from the judgment entered in the Court of Common Pleas of Philadelphia County in favor of Appellees/Defendants Carin A. O'Donnell, Esq., and Stark & Stark, P.C., in this legal malpractice action.  We affirm.

Mr. Gallagher sustained a serious injury to his ankle during a work-related accident, and Appellees represented him in his workers' compensation claim and both his wife and him in their third-party personal injury claim.  As part of the settlement reached in the third-party claim, the Gallaghers signed a general release on future claims consistent with Appellees' legal advice.

Two months later, Dr. Ramon Lopez, D.P.M., performed the first of several unsuccessful surgical operations on Mr. Gallagher's injured ankle,

---

*   Former Justice specially assigned to the Superior Court.

prompting the Gallaghers to consider filing a medical malpractice claim against Dr. Lopez. However, the Gallaghers never filed suit, as they determined the general release they had signed in settlement of their third-party claim precluded a medical malpractice claim alleging negligent treatment of Mr. Gallagher's injured ankle. Instead, the Gallaghers instituted the present legal malpractice action against Appellees for their role in advising them to sign the general release in the third-party lawsuit without explaining the full effect of such a release.

Appellees filed preliminary objections in which they asserted, *inter alia*, that the Gallaghers' claims should be dismissed because the release would not have precluded Mr. Gallagher from filing a medical malpractice claim. The release, Appellees maintained, only released "'AMQUIP CRANE RENTAL, LLC, SUNOCO, and all their respective insurers, and their affiliates and/or subsidiaries, servants, agents, employees and representatives, as well as their successors and assigns (hereinafter collectively referred to as "Releasees"), from any and all actions . . . .' Dr. Lopez was not released." Appellees' Preliminary Objections, filed 10/13/14, at 8.

In the Gallaghers' Answer to Appellees' preliminary objections, they denied that the release applied only to the named parties. Because the release stated it applied to "*specifically, but not limited to*, all claims of any kind, character, or description which have been or could have been asserted against the Releasees[,]" it applied to additional parties, as well, the Gallaghers

maintained. This broad application, the Gallaghers continued, was reinforced by additional language in the release stating:

> IT IS UNDERSTOOD AND AGREED that this is a full and final release of all claims of every nature and kind whatsoever, and releases claims that are known and unknown, suspected and unsuspected, and that the amount paid herein is in the nature of a compromise settlement and is not to be considered an admission of liability, liability being expressly denied.

Plaintiff's Answer to Preliminary Objections, filed 12/12/14, at ¶ 24; Plaintiff's Memorandum of Law in Opposition to Preliminary Objections, filed 12/12/14, at 3.

Prior to trial, the parties jointly stipulated that Appellees' motion *in limine* to preclude the Gallaghers' claims based on the release raised a matter of law that would dispose of the matter if the court granted the motion. This was so because the Gallaghers' legal malpractice claim could prevail only if the court determined that the release barred a medical malpractice claim against Dr. Lopez and that Appellees failed to advise him of this effect. The parties agreed that if the court granted Appellees' motion, it would enter judgment for Appellees. If, instead, the court denied the motion, the joint stipulation provided that the parties would proceed to a final and binding arbitration before the Judge Richard Klein (Ret.).

After entertaining oral argument on the motions, the trial court granted Appellees' motion and entered judgment in favor of Appellees and against the Gallaghers on January 4, 2017. Specifically, the court determined:

[t]he treatment received by [Mr. Gallagher] from Dr. Lopez as a result of the [Sunoco] incident is not included in that clause [appearing in the release]. Any potential suit [the Gallaghers] may have against Dr. Lopez as a result of the treatment for the injury occurring out of the accident [is] a separate occurrence. Any potential claim for injuries caused by Dr. Lopez would be subject to [a] medical malpractice claim against the doctor, and would not be related to the injuries which occurred on September 28, 2006, at the Sunoco Refinery.

Trial Court Opinion, 12/29/17, at 5.[1]  This timely appeal followed.

The Gallaghers present the following question for our consideration:

**DID THE LOWER COURT ERR IN GRANTING THE MOTION *IN LIMINE* TO PRECLUDE [PLAINTIFFS/THE GALLAGHERS]**

---

[1] The trial court would go on to opine in its Pa.R.A.P. 1925 opinion, "Although Dr. Lopez is an affiliate of Sunoco, the release did not include actions by affiliates of Sunoco after the September 28, 20006 [sic] incident." TCO, at 5. Both the Gallaghers and Appellees agree on appeal, however, that there is no factual basis for the apparent factual finding that Dr. Lopez was an affiliate of Sunoco. **See** Brief for the Gallaghers, at 16 (noting the trial court "inexplicably states that Dr. Lopez is 'an affiliate' of Sunoco[,]" as "there is nothing in the record to support this statement[.]"). The Gallaghers complain further in their brief that the trial court engaged in a finding of fact that was not part of the motion and "was not for the [trial court] to determine. [The Gallaghers are] unsure of what is meant by 'affiliate' and even more concerned that this may have played some part in the Decision." *Id.*, 16-17.

In the Gallaghers' reply brief, however, they argue for the first time that remand is required because the court's apparent factual finding would necessarily bring Dr. Lopez's alleged negligent surgery within the scope of the release, as the release applied to affiliates of Sunoco. We disagree with this assessment, not only because both parties agree there is no factual support for what appears by all accounts to be a mistaken finding made by the trial court, but also because of our determination, explained *infra*, that the release may not fairly be said to have contemplated a separate medical malpractice cause of action that did not accrue until months after the parties executed the release. This conclusion takes the alleged negligent surgery outside the scope of the release, even if Dr. Lopez were an affiliate of Sunoco who possessed standing to assert the release as a defense to the medical malpractice claim against him.

**FROM PURSUING A CLAIM BASED ON THE LANGUAGE OF THE RELEASE AND ENTERING JUDGMENT IN FAVOR OF [DEFENDANTS/APPELLEES] WHERE THE GALLAGHERS HAVE BROUGHT A LEGAL MALPRACTICE CLAIM AGAINST APPELLEES ALLEGING THEY FAILED TO EXPLAIN TO THE GALLAGHERS THAT THEY WERE GIVING UP ANY RIGHT TO BRING ANY ADDITIONAL ACTION ARISING FROM [MR. GALLAGHER'S] INJURIES, INCLUDING A POSSIBLE MEDICAL MALPRACTICE CLAIM, WHERE THE RELEASE WAS SPECIFICALLY NOT LIMITED TO INJURIES SUFFERED OR CLAIMS THAT COULD HAVE BEEN BROUGHT AGAINST THE SETTLING PARTIES AND IT IS SETTLED LAW THAT THE EFFECT OF THE RELEASE MUST BE DETERMINED FROM THE ORDINARY MEANING OF ITS LANGUAGE?**

Appellant's brief, at 5.

"[A] court's decision to grant or deny a motion *in limine* is subject to an evidentiary abuse of discretion standard of review." ***Commonwealth v. Reese***, 31 A.3d 708, 715 (Pa.Super. 2011) (*en banc*).

> Judicial discretion requires action in conformity with law on facts and circumstances before the trial court after hearing and consideration. Consequently, the court abuses its discretion if, in resolving the issue for decision, it misapplies the law or exercises its discretion in a manner lacking reason.

***Miller v. Sacred Heart Hosp.***, 753 A.2d 829, 832 (Pa.Super.2000) (internal citations omitted).

The Gallaghers assert that the sole issue before us is whether the scope of the release may include future claims against a non-named individuals. They direct us to the following sentence within the release as supportive of their position that the release may fairly be read to contemplate the future medical malpractice claim against Dr. Lopez:

## **GENERAL RELEASE**

. . . Michael Gallagher and Sharon Gallagher . . . do hereby . . . acquit and forever discharge:

Defendants, AMQUIP CRANE RENTAL, LLC, SUNOCO, and all their respective insurers, and their affiliates and/or subsidiaries, servants, agents, employees and representatives, as well as their successors and assigns (hereinafter collectively referred to as "Releasees"), from any and all actions, causes of action, claims, demands, damages liabilities or suits of any kind, in law or in equity, whether known or unknown, *including but not limited to* all claims and liability arising out of or in any way related to injuries and/or damages sustained as a result of the incident that occurred on or about September 28, 2006, located at the Sunoco Refinery in Philadelphia, Pennsylvania, . . . *including specifically, but not limited to*, all claims of any kind, character or description which have been or could have been asserted against the Releasees.

Appellant's brief, at 6-7 (quoting General Release, dated 10/8/2009, at 1) (emphasis added).

According to the Gallaghers, the two instances where the release uses the expansive language "including but not limited to" when setting forth claims subject to the release show that the release was limited neither to injuries caused by the September 28, 2006, incident nor to claims that could have been asserted against the Releasees. They argue, therefore, that their release is similar to releases examined in other cases where our courts have recognized a broadly-worded, general release may release more parties than those specifically named. **See Buttermore v. Aliquippa Hosp.**, 561 A.2d 733, 735 (Pa. 1989) (holding release discharging particular individual and

"any and all other persons . . . whether herein named or not" applied to all tort-feasors despite fact they were not specifically identified in release). *Id.* at 735. We discern no such similarity. Because the precedential cases involved releases that plainly and explicitly applied to all other persons potentially liable for any future damages related to the underlying event in question, they are inapposite to the case *sub judice*.

For example, the Gallaghers cite **Fortney v. Callenberger**, 801 A.2d 594 (Pa.Super. 2002) to advance their position. In **Fortney**, Daniel Fortney filed a medical malpractice action alleging negligent emergency surgical treatment of an ankle injury he sustained in a motor vehicle accident. In response, the surgeon raised the defense of a general release Fortney had executed in settling his motor vehicle claim.

The Fortney release stated the following:

> [Fortney] hereby releases and forever discharges Hattie Sweeney, Robert Sweeney, Brandon Moyer, their heirs, executors, administrators, agents and assigns **and all other persons, firms or corporations liable or, who might be claimed liable**, none of whom admit liability to the undersigned but all expressly deny any liability, from any and all claims, demands, damages, actions, causes of action or suits of any kind or nature whatsoever, and particularly on account of all injuries, known and unknown, both to person and property, which have resulted or may in the future develop from an accident which occurred on or about the 3 day of January, 1996, at or near Ayersville, PA.
> ¶
> Further, the release state[d]:
>
> [Fortney] hereby declares that the terms of this settlement have been completely read and are fully understood and voluntarily accepted for the purpose of making a full and final compromise adjustment and settlement of any and all claims, disputed or

otherwise, on account of the injuries and damages above mentioned, and for the express purpose of precluding forever any further or additional claims arising out of the aforesaid accident.

*Id.*, at 596 (emphasis added).

Under our standard of review, we set out to "determine[] the effect of [Fortney's] release using the ordinary meaning of its language *and* interpret[] the release as covering 'only such matters as can fairly be said to have been within the contemplation of the parties when the release was given.'" *Id.*, at 597 (quoting *Vaughn v. Didizian*, 648 A.2d 38, 40 (Pa.Super. 1994)) (citations omitted). *See also Bowman v. Sunoco, Inc.*, 620 Pa. 28, 41, 65 A.3d 901, 909 (2013)(recognizing "[a] long line of Pennsylvania cases has held that a release covers only those matters which may be fairly said to have been within the contemplation of the parties when the release was given.") (citation omitted). We noted, further, that releases are strictly construed so as not to bar the enforcement of a claim that had not accrued at the date of the execution of the release. *Vaughn*, 648 A.2d at 40 (citations omitted).

First, examining the language of Fortney's release, we observed it discharged from liability not only specified persons but also "all other persons, firms or corporations liable or, who might be claimed liable . . . from any and all claims . . . of any kind or nature whatsoever, and particularly on account of all injuries . . . which have resulted or may in the future develop from [the accident in question]." *Fortney*, at 598. Therefore, we found the release was potentially applicable to persons not named therein.

In this regard, we specifically relied on **Buttermore**, which, as noted above, held language releasing "any and all other persons . . . whether herein named or not" potentially discharged all tort-feasors regardless of whether the release failed to identify them in particular. **Id.** at 735. Virtually identical language in Fortney's release in settlement of the motor vehicle action, therefore, clearly gave the surgeon standing to assert the release as a defense to Fortney's subsequent malpractice claim.[2]

---

[2] **See also Collas v. Garnick**, 624 A.2d 117 (Pa.Super. 1993), for the proposition that the discharge of "all other parties known or unknown" from liability potentially reached persons unnamed in the release. In **Collas**, Marie Collas filed a legal malpractice case against her former lawyer who had advised her to sign a general release as part of the settlement of her motor vehicle-related personal injury action. The "general release [], by its terms, released and discharged the other driver *and all other parties, known or unknown, who might be liable for the damages sustained*." **Id**. at 119 (emphasis added).

Before signing, Collas asked her lawyer if the release would affect her plan to sue the manufacturer of her vehicle's seat belt system or any other tortfeasor. Her lawyer assured her that a cause of action against such parties would survive the release. In reliance on the lawyer's advice, she signed. Subsequently, her action against the seat belt manufacturer was dismissed after the trial court held her action was barred by the prior release. This Court affirmed and the Pennsylvania Supreme Court denied allocatur.

In Collas' ensuing legal malpractice case, the trial court sustained the lawyer's preliminary objections on recognized public policy dismissing legal malpractice complaints where the client agreed to a settlement only to allege, thereafter, the inadequacy of the settlement. **See Muhammed v. Strassburg, McKenna, Messer, Shilobod and Gutnick**, 587 A.2d 1346 (Pa. 1991) (barring legal malpractice suits filed by clients who agreed to negotiated settlement but later regret its terms). This Court, however, distinguished **Muhammed** on its facts, and reversed.

(footnote cont')

Next, we inquired into whether it could fairly be said that the contracting parties anticipated the malpractice claim when they executed Fortney's release. Prior to signing, Fortney had been experiencing extensive post-operative problems with his ankle for months despite physical therapy, and he reported these problems to the tort-feasor motorist's insurance company. Therefore, because the medical malpractice cause of action accrued prior to the execution of the release, we concluded that the release contemplated the malpractice action, such that Fortney discharged the surgeon of any possible liability when he signed it.

In contrast to this governing decisional law, the case *sub judice* involves neither release language discharging "all other liable or potentially liable persons" nor facts demonstrating an accrual of the Gallagher's medical malpractice cause of action prior to the execution of the release.

The ordinary meaning of the language in the Gallaghers' release shows that it discharges only a defined set of persons consisting of named entities and their "respective insurers, and their affiliates and/or subsidiaries,

---

Unlike the plaintiff in **Muhammed**, the Court reasoned, Ms. Collas' legal malpractice claim complained not of the settlement reached in her motor vehicle accident but of counsel's reassurance during settlement negotiations that the release would not preclude a planned separate action against the seatbelt manufacturer for Ms. Collas' injuries.

Moreover, and most pertinent to the case *sub judice*, because the general release clearly applied to "all other parties, known or unknown, who might be liable for the damages sustained" by Ms. Collas, the release potentially reached unnamed persons, and counsel rendered negligent advice if the averments of the complaint against counsel were correct, we concluded. **Collas**, 624 A.2d at 121.

servants, agents, employees and representatives, as well as their successors and assigns (collectively referred to as Releasees)…." The Gallaghers argue that expansive language elsewhere discharging the Releasees from any and all actions, "including but not limited to" all claims and liability arising out of or in any way related to injuries and/or damages sustained from the Sunoco Refinery incident necessarily expands the release to apply to individuals unnamed. The "including but not limited to" phrase in question, however, expands not the persons potentially affected under the release but, instead, only the kinds of claims potentially filed against the defined set of Releasees.

Nor do the facts support the conclusion that the Gallaghers' medical malpractice claim against Dr. Lopez had accrued at the time they executed the release. Unlike in **Fortney**, where the plaintiff signed the release only after notifying the tortfeasor's motor vehicle insurer of lingering complications with his ankle after unsuccessful surgical intervention, the Gallaghers signed the release months before Mr. Gallagher underwent his first surgery. As such, it cannot fairly be said the contracting parties contemplated the release would apply to a future malpractice action for a surgery that did not yet occur.[3]

_____

[3] Also instructive on the question of accrual is **Vaughn**, where we held a general release discharging "all known and unknown claims against all known and unknown parties arising from injuries sustained in the automobile accident[]" did not bar a medical malpractice action where the parties signed the release eight months before the surgery to repair Vaughn's accident-related injury. Because the cause of action in the medical malpractice case did not accrue until after the signing of the release, we reasoned, the parties could not have contemplated future negligent surgery that was alleged in the

Consequently, there is no merit to the Gallaghers' argument that the release they signed in settlement of their third-party claim discharged Dr. Lopez from potential liability for negligent surgical treatment of Mr. Gallagher's ankle occurring two months after execution of the release. The release did not include language expanding the scope of the release beyond the set of named entities and others with a defined relationship to such entities, who were collectively named as "Releasees." Nor can we say Mr. Gallagher's medical malpractice cause of action accrued at the time of the release when another two months would pass before Dr. Lopez performed the first of several ankle surgeries in question. For these reasons, we discern no error with the court order granting Appellees' motion *in limine* and the ensuing entry of judgment in Appellees' favor.

Judgment affirmed.

_____

malpractice action. ***See Bowman***, 65 A.3d at 909 ("Waivers which release liability for actions not accrued at the time of the release are generally only invalid if they involve future actions entirely different than ones contemplated by the parties at the time of the release. . . . ***Vaughn*** involved a waiver that involved actions not anticipated by the waiver or release.").

Here, as in ***Vaughn***, we cannot fairly say the release anticipated a medical malpractice action based on future negligent medical treatment for Mr. Gallagher's accident-related injury. As such, the release would not have precluded the Gallaghers from filing a timely medical malpractice claim against Dr. Lopez.

- 12 -

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/16/18